Case number 13-4348 David F. Antoon v. Cleveland Clinic Foundation Intuitive Surgical Incorporated, et al. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. And Mr. Schultz, you may proceed for the appellant whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Matt Schultz. I'm here representing the appellant, David N. Antoon. I'd like to reserve three minutes for rebuttals. Your Honors, the decision of the trial court, one, denying leave to amend the complaint, and two, dismissing the first amended complaint, is the result of a series of legal errors that the district court made. The first error had to do with conditions of participation versus conditions of payment with regard to the TRICARE regulations. The second had to do with the requirements for disclosure to the government in order to become an original source under the FCA. The third had to do with the requirement that's found nowhere in the case law for injury to the relator. That's the easiest issue to deal with, Your Honors. This Court has said that an FCA claim does not compensate the taxpayer for an injury inflicted upon him. Rather, the FCA permits a pre-trial plaintiff to bring a suit in the name of the United States for contract fraud committed against him. That's an easy issue. That's error. It's only one of the errors that needs to be addressed. Let's assume, for purposes of my question, that the district judge was in here in all three of those cases. Do we still have to get, do we not, to whether the realtor was an original source? And in that regard, just so you can tell what my concern is and you can then address it, it seems to me underlying all of this that this district judge was looking at the fact that your client didn't have any knowledge, first-hand knowledge, which I think we can require, that this doctor was not in the surgical suite at the time of the surgery and that he had actually submitted a false claim. So even if you assume, even if we assume you're right on those things, how do you still win on the original source? There's actually two ways you can become an original source under the statutes, Your Honor. One of them is having personal knowledge. The other one is making a report that leads to the discovery of the important information, which is what Colonel Ann told me. He suspected that Dr. Cahoot was not involved in the surgery because of Dr. Cahoot's comments to him and to his wife and to the fact that he never saw him before the surgery. He saw Dr. Lee and Dr. Gold. That suspicion led him to make the report, which led to the CMS investigation, where— I want to focus on that with more precision than the parties focus on. With the prior disclosure to the government, the document we were able to locate— tell me if there's another one— is the August 19, 2009 letter to the El Trino Department of Health, which was later forwarded to CMS. Is that what you rely on for your first initial disclosure to the government? Yes, Your Honor. That is the letter that the first— That letter talks about your malpractice claim, but it does not, as I read it, discuss any claim to a government payment or anything that could amount to fraud on the government under the False Claims Act. Would that be correct? I believe you're correct, Your Honor, but I don't believe that the statute requires that. Okay. What can you tell us about— I don't know that the statute answers that on its face. What can you tell us about which cases do you claim most clearly support your contention that the disclosure you made to the government was indeed sufficient? I'm afraid I don't have any case law in front of me on that issue. I do have the case law regarding who the disclosure needs to be made to, which is somewhat related. Well, but that's not what I'm asking. I'm assuming you're right about that. Let's assume that—I mean, obviously, you didn't contact the federal government directly in this letter, but it happened to get to the federal government. Is there any—and you've told me, I understand that that's the only document you're relying on. So let's assume— Actually, Your Honor, that's only the first of many complaints that Colonel Anton has made to the CMS. It's resulted in a series of— Well, what documents in the record should we be looking to defend the—to give us both the timing and the scope of the complaints that he made? Well, that's part of the problem, Your Honor, is that we're looking at evidence, and this is a pleading issue. I think that that's part of where the— So this is clearly—these complaints are clearly the sort of document that could have been attached to the complaint or the admitted complaint or the second admitted complaint, correct? They are, Your Honor, but there's no requirement for evidence when you're pleading a complaint. These documents can be considered in this context, and I'm asking which particular documents, a thousand pages or so, that are attached to the complaint that we should be looking to to establish this aspect of the independent source? Your Honor, that's the only one I can identify for you right now. As you said, there were hundreds of pages of attachments to our second admitted. Well, let's elaborate on that just for a second. You say, well, I think there are other things that I can't tell you what they are. Were these other things also similarly complaining about what is essentially a malpractice claim? I went to the hospital. This is what happened to me. I was wrong. Or do they also say, and the government was wrong by virtue of submitting a fraudulent payment request? That's the information that came to light as a result of this issue. I think I understand what you're asking about. It's a very specific question. What I think Judge Gibbons is asking you is does the False Claims Act envision making a complaint that nowhere says there was fraud in the government, which is the whole point of the act? And so, therefore, if you just say I was harmed that the government is supposed to figure out and the government was harmed. I can't believe that's what the act envisions. So in this whole variety of other unnamed documents, does it advise the government that false claims were being submitted to it? I don't believe in that letter that there is any allegation of particular fraud, Your Honor. Well, we know there isn't in that letter. There may be the other ones that I can't identify. These other unnamed documents, are you even claiming that the other ones that you can't identify have an allegation that was fraud committed on them? I believe the later ones do, Your Honor, but I'm not sure. Well, this is a jurisdictional issue, isn't it? Doesn't the statute say that the district court has no jurisdiction unless you can prove you're an original source? That is what the statute says, Your Honor. And does that change the calculus in terms of what can be considered? In that situation, the right thing for the district court to do is to allow us to perform some discovery in order to get that information. That was never an option. What we're asking you, Matt, is think you submitted it. Yes, Your Honor, and as far as pleading where it was submitted. We're saying it's not our job to go through these 1,000 pages and try to figure out whether you're a client of the statute. So I would have assumed you would have done that. That's who we are. And so just point us to what you want us to look at in the 1,000 pages. That's the issue. We're not required to submit evidence at this stage, Your Honor. We're required to make allegations. I am permitted to ask you a question. Yes, Your Honor. So what do you want us to look at? Pretty simple. As I said, I can't direct you to any particular document, Your Honor. Okay. As far as the jurisdictional issue goes, we never had the chance to perform any discovery that would allow us to get the correct information. The information I currently have. The jurisdictional issue here is whether or not you're an original source. So I would think that that information would be within your own possession. Because you can say what was told when, and I think that's the judgment he was getting at. What is it, or to put it another way, a less original way, what did you know and when did you know? And I think the third question is, when did you tell him? That original letter that Judge Gibbons identified is the first report. So that's the when, Your Honor. Well, we do have cases that, as I recall, that somebody says, look, I sent a lot of things in to the government, but I didn't keep copies. So they have them in their possession. They won't give them to us. You've got to court, you've got to order them to give it to us to corroborate what I'm saying. But you haven't said that. I don't believe that's the case, Your Honor. Your client seems to have been a meticulous record-keeper, letter-writer. So you're not claiming, does anything that would help you in the original source rule that he doesn't have? No, Your Honor. I don't know that anything like that exists. Let me ask another question. You do not—do you concede that the jurisdictional issue turns on whether your client was an original source? Yes, Your Honor. That's exactly what the statute says. Okay. You don't challenge any—you don't challenge or discuss in any way the issue of whether there had been a public disclosure? There was absolutely eventually a public disclosure in the form of the CMS reports on the investigations, Your Honor. The timing of that is— Well, the lawsuit was a public disclosure. The statement was in the mail. That actually happened after, I believe, the first CMS report came out, Your Honor. I may be wrong on that timing, though. Well, the CMS report—in the CMS report, both the lawsuit alleged anything about fraud against the government, I now believe. So—but you—but that degree of precision, you can see, is not required for a public disclosure to have been made. I believe the public disclosure revolves around the actual facts, Your Honor, much like the report does. The fact, in this case, being the allegation, at least, that Dr. Coog was not present for the surgery had been double-specified before. One more factual kind of question. The—well, I can't remember right now what it is. Well, come back to me in a minute if you keep talking. Your Honor, it's the other issue that I'd like to address. It's the issue of conditions of payment versus conditions of participation. The district court ruled that the portions of the TRICARE manual and the Code of Federal Regulations that agree with those were conditions of participation rather than conditions of payment. I'd like to direct the Court's attention to the Seventh Circuit's decision in Colbert v. Rush. They dealt with Medicare regulations rather than TRICARE, but they are almost exactly the same, Your Honor. The Seventh Circuit held that those are conditions of payment and thus can form the basis for a False Claims Act. And I'm out of time, Your Honor. Well, yeah, but I have my question. So, factually, in all of this, how did—this, I think, relates to the question of independent sort. How did you get 1,500 forms on which your claim is based? This is a FOIA request? Yes. Okay. So—and that is the only basis you have for your assertion. I mean, that single document is the basis for your assertion for the fraud claim. For the fraudulent claim that the doctor and or the foundation made yesterday. What do you do with the case law that says you don't have direct and independent knowledge if you retain—if you obtain documents from FOIA? I mean, that's an oversimplification of what the cases say, but I'm thinking specifically of cases like AFTER in the Tenth Circuit. And there's a Third Circuit case, the name of which escapes me right now. It was written by Justice Alito, and he was a member of the Third Circuit board. It's my understanding—and I know I said the cases about this in the brief, Your Honor—that where you have personal knowledge, that leads you to perform an investigation. Even if that's an investigation into public records. If you're the person who puts that information together, you're still the original source. But you've admitted that he didn't have personal information. He had— This is basically a circumstantial case. Your Honor, he had the information that he believed that Dr. Kuhb was not present for his surgery. That led him to perform some research—using public records, but performing research—where he found that Dr. Kuhb claimed he was present for that surgery and billed the government for it. Your answer to the fact that there is evidence that shows that he wasn't there. Thank you, Your Honor. Absolutely, Your Honor. Mr. Paulson is going to take three minutes, and I'll take 12 minutes. Good morning, Your Honors. May it please the Court, Matthew Corcoran, law firm of Jones Day, on behalf of Cleveland Clinic Appellees. I would like to start where Mr. Schultz ended, and that is whether or not suspicion followed by investigation into that suspicion through FOIA requests results in someone gaining original source status. Judge Gibbons, you had referenced a Third Circuit case after, but the Supreme Court has actually spoken on this specifically in the Schindler Elevator v. U.S. X. Rel. Curb, and has held that information contained in FOIA requests is public disclosures and does not give the relator that sought that information original source status. Were any of those cases cases where the person was making a FOIA inquiry connected to something that happened to that person? Yes, Your Honor. In fact, Schindler was. Schindler involved an employee at an elevator company, and the elevator company received aid from a Vietnam veterans program, and it required the company to file reports every year stating their compliance with the way they were dealing with Vietnam veterans. He had suspicion when he was there that they were violating these reports and left the company and filed a Department of Labor investigation into constructive termination. He had his wife file FOIA requests, and the court held that that information obtained from the FOIA request was a public disclosure and he couldn't rely on it. This case is not your brief, is it? It is, Your Honor. It is? Where is it? Okay. I guess I can't read it because I don't have proof. I was hoping you would ask the page number. Um, but... Justice Thomas, right of the majority, said, The sort of case that Kirk has brought seems to us a classic example of the opportunistic litigation that a public disclosure bar is designed to discourage. Although Kirk alleges that he became suspicious from his own experience as a veteran working at Schindler, anyone could have filed the same FOIA request and then filed the same suit. Similarly, anyone can identify a few regulatory filings and certification requirements, submit FOIA requests, until he discovers a federal contractor was out of compliance and potentially reported in law to keep him in action under the FCA. And there, the court held that he was not an original source in the claim. There was no subject matter jurisdiction under the claim. In a different context, this court in Washburn v. Lockhead explained the nature of the disclosure to the government. It needs to put the government on notice of the fraud. It needs to be sufficient to put the government on notice of the fraud, and it's not enough just to make an allegation. There, they were dealing with the first file rule. And the question was, was a previous complaint that did not satisfy Rule 9 sufficient to put the government on notice, such that a second file complaint by a different relator would be bought? And the court said there that a complaint that doesn't satisfy Rule 9 does not put the government on notice of fraud. And so the information that the relator has to disclose to the government has to be sufficient under Rule 9 to disclose that fraud to the government. With respect to the public disclosure bar beyond Dr. Couch's claims, in the proposed amended complaint, he identifies several other patients that he claims also were severely harmed by surgeries performed by Dr. Couch. None of that information could have been disclosed to the government prior to the public disclosure, because he alleges that they contacted him after the Cleveland Plain dealer ran an article about his first malpractice case. And it's impossible, since he did not learn about that information until after the public disclosure, for him to have disclosed it. I would like to address also Mr. Schultz's discussion of the conditions of payment. I have a question about the jurisdictional issue. Since Mr. Schultz had no issue of whether there was a public disclosure, I have a general question about the statute regarding jurisdiction. Apparently, there's a real dichotomy between how specific the public disclosure has to be and what it is that the individual to be an original source has to have told the government. Do you agree with that or not? I agree to the extent that in order for a public disclosure to be a public disclosure, it does not have to include an allegation of fraud. Okay. You think that is absolutely settled then. But, conversely, wouldn't the original source rule, doesn't it become relevant whether the potential relator is in fact informed the government of fraud? I believe so, Your Honor. So there is a real distinction there? Yes. And, in fact, this Court has dealt with that issue in the United States v. Jones. They say that in order for a public disclosure to be sufficient, there needs to be X plus Y, which is the true state of facts and the false state of facts. But there does not need to be an allegation of actual fraud. And later, in Poteet, the public disclosure does not have to make an allegation that a false claim was submitted. It's just the true state of facts and the false state of facts, which are required for a public disclosure. The dry care reimbursement manual, which was what they relied on below, is a manual that governs the conduct of contractors who provide claims processing services to the dry care system. It does not purport to regulate the conduct of providers like the Cleveland Clinic. And it is not a law or regulation, and therefore it cannot be a condition of payment. And the only relevant condition of payment, arguably, that exists is found in 32 CFR 199.4C313, which requires a teaching physician to be present for the critical portions of the surgery in order to achieve attending physician status. That regulation, nor any other law or regulation cited by the appellants, requires that the teaching physician make any documentation or record of his participation in that surgery in order to be an attending physician. Does it matter whether the manual is actually supported by regulations or not, or whether it's just basically a freestanding manual anchored to a regulation? I do not think it matters. If a manual could just cite two regulations and thereby gain condition of payment status, it would be essentially making laws or regulations without going through the notice of conduct period, without putting providers on sufficient notice of what is expected of them in the complex Medicare and dry care regulations. So the fact that it cites regulations and then builds upon them does not make it a condition of payment. Well, it seems to me that much is being made of this district court in Connecticut case, Henry Cardiac Crisis, pre-temp litigation, that lists a number of cases that talk about violations of Medicare bulletins and other things that are arguably short of laws and regulations. Are those cases just wrong, or are they, for some reason, inapplicable to the facts of this case? I would say that they are inapplicable to the facts of this case. Why? Because the dry care reimbursement manual regulates the conduct of contractors and does not purport to regulate the conduct of providers. And I point, Your Honor, to the decision in Swofford in which there was a similar contractor manual that was held to not create conditions of payment. Wasn't that decision to not turn on the fact that the manual was not public, it was not available, except to contractors? And isn't the dry care manual readily available to providers as well? I mean, it's online. Everything's online now, but yes, the dry care manual is online. The way I understood Swofford was, respectfully, Your Honor, is that it was the fact that it did not regulate the conduct of providers. And in order for there to be a condition of payment, there needs to be some rule or regulation so that the provider is on notice. Require them to go through every leaflet that comes out and everything that's available online to figure out the requirements of when they can submit a claim and not would create all sorts of administrative problems. And therefore, the conditions of payments have to be found in the law. But one of the conditions of payment is that in order to go through the work, you have to do the work, right? Yes, Your Honor. Is that really what the crux of the allegation in the complaint is, that there were payment forms submitted for work that the doctor did not perform? The complaints do not allege that the doctor did not perform. What they rely upon is interpretations of the medical records of the patient to suggest that there's not an initial here or there's not a signature here and use that to create an inference through their briefs that the doctor wasn't there. And so that goes back to the point that they can't just say it because they don't actually know it. Correct, Your Honor. I want to go back to this TRICARE reimbursement manual for just a second and what the then district judge said in the swap. Are you saying that the TRICARE reimbursement manual doesn't apply to providers like the Cleveland Clinic? Yes, Your Honor. Who does it apply to? It applies to contractors who provide claims services processing to TRICARE. So TRICARE contracts with private companies to handle the claims as they come in from providers and to process them for payment or reject them and then seek reimbursement from the government. And so they prepare manuals for those contractors to tell them how to fulfill their duties. These contractors are the old fiscal intermediaries? Yes, Your Honor. So you deal with the contractor and the contractor submits the claim? The claim is submitted to the contractor. You being Cleveland Clinic? Cleveland Clinic submits the claim to the contractor. The contractor uses this manual to determine whether or not to pay the clinic's bill and then the intermediary tells the government how many claims it's paid and seeks reimbursement from the government. Could the manual be said to incorporate the regulation that's in question? The manual does, and a portion of it, quote that regulation. And we would not contend that the portion where it quotes the regulation is not a condition of payment. The condition of payment is the regulation itself. I understand that. But what I'm kind of missing here is you're standing back saying, gee, that TRICARE manual doesn't apply to us. You would be, obviously the Cleveland Clinic isn't going to be going about the business of submitting claims to a carrier that are not, for which reimbursement is not permitted under this TRICARE manual. Am I missing something here? Obviously, it seems obvious to me, you would take into account what the TRICARE manual allows to be reimbursed to the fiscal intermediary before you submitted a claim to the fiscal intermediary. The clinic may take that into account. I don't know the answer to that question, but the requirements for note-keeping, the clinic has its own requirements for note-keeping and record documentation. Essentially here, the issue here is, within the manual, is were there initials and were there signatures? And if the intermediary stopped reimbursing the clinic, they may change their policies in order to address the concerns of the carrier. The broader question is the manual allows teaching physicians to get reimbursed as long as they form an attending physician relationship with the patient. The whole argument by the journal here is that there wasn't any attending physician relationship because the guy wasn't even there. That is the argument. This may be correct. So obviously, Cleveland Clinic knows that for teaching physicians to get reimbursed, they have to have been involved in the surgery, right? I'm not suggesting that he did not have to be involved in the surgery to get reimbursed. What I'm suggesting, Your Honor, is the requirements about the documentation of that participation in the surgery is not a condition of pain. And so the numerous records from his medical files that are attached to the complaint all reflect that Dr. Cal was a surgeon. So what you're saying is that if the complaint said that the doctor wasn't present in the performance surgery, but billed for it, or the clinic billed for it, there would be a violent claim. All other things aside, but what you are saying is that because that can't be alleged due to lack of personal knowledge, the only thing that can be alleged is a violation of technical requirements that are set forth in the Tri-Care Manual, and that's not sufficient. Is that where you're going with that? That's exactly what I'm saying, Your Honor. I see that my time is up. I'm just going to ask you to adjourn. Good morning. I'm Colton Paulson, Aspire Patent Law, and I'm a copycat for Intuitive Surgical. I'll be very brief. Nothing referred today has anything to do with Intuitive Surgical. You were a defendant below. The district court made a specific financing fact regarding the couple of allegations that regarded my client. Which has to do solely with the anti-kidnapping. That's right. And which has to do with an allegation that we had paid Mr. Anton's doctor to push robot surgery. That hasn't been involved in this appeal. There was nothing in any of the briefs about it. And there was also a finding on a public disclosure document regarding us, which had nothing to do with what we talked about today. And so our argument in our brief was simply that this has been waived. Now, in reply, we got an argument saying, triting us for, hey, you didn't disrest the supplemental jurisdiction argument. But we didn't because they waived that argument. In fact, there's no mention of us in the brief. We're mentioned, but there's no arguments against us. There's no plea that anything happened. There's nothing for us to address. I'm going to ask this court, therefore, as to Intuitive Surgical, to simply affirm the district court's decision. Any questions? Thank you. Mr. Schultz. Thank you, Your Honor. With regard, Mr. Schultz, I do have a question about the supplemental jurisdiction question, which you didn't get to. Yes, Your Honor. Initial argument. Essentially, you're saying the district judge should now take into account what happened after the district judge ruled, i.e., you went to state court, the state court didn't hear your question, right? That was part of our prejudice argument, Your Honor. It becomes important if and when this court reverses either the decision to leave to a vet or the decision to dismiss the person on your complaint. What were the state claims? If I could just finish that. You're going in a different direction here, but I didn't want to ask. You have appealed the state trial court's dismissal of your claim, have you not? Yes, Your Honor. And that's pending. As I understand it, that's currently pending in an Ohio court of appeals. In the eighth district, Your Honor, yes. So, you haven't been, your client has not been denied his right to pursue these state law claims in state court yet, right? With regard to the trial court, yes, Your Honor. The appeal should not be necessary in order for him to vindicate his rights. It has been so far. Kevin, here's the deal. He's already been told no. You're asking us to say that because the state court got it wrong, and that's what you said in your appeal. Therefore, the federal court should exercise its discretion, even though the federal claim has been dismissed. That's it, isn't it? No, Your Honor. As I said, it becomes important if the federal claim is revived. I wouldn't expect the district court to exercise civil battle jurisdiction without the federal claim. Okay. Well, that answers the question. So, if we reverse on the False Claims Act, we want the judge to revisit the decision on civil battle jurisdiction. Yes, Your Honor. If we dismiss on the False Claims Act, you're left with your recourse in state court on the state claims, right? And that becomes a final decision from this court, and that's the argument we make in the eighth district, Your Honor. Got it. Thank you. Well, that doesn't help you. If we say that the second amendment complaint is futile and somehow find a claim in the first amendment complaint, you don't have any state law claims, do you? We go back and we ask the district court for a leave to amend, and at that point, there's no reason to say no. But you're not asking us for that. You go back to the district court on that. I believe we would have to, Your Honor. I wanted to address a few things that came up. With regard to intuitive, in the second amendment complaint, we pleaded claims for product liability and breach of warranty claims. If that second amendment complaint is revived, they will be a party. That's why we felt they were necessary in this appeal. With regard to the Swofford case, the district court stated that by its terms, the carrier's name, which was made for carriers, does not purport to address the physician's decision to submit a claim for reimbursement. The Tricare Manual, on the other hand, has a list of six requirements, which you're talking about, Judge McKee, for teaching physicians to become attending physicians and thus be able to bill separately. The Tricare Manual is directed at health care providers, Your Honor. It's not directed at insurance bureaucrats. It contains lists of things that health care providers must do in order to submit a correct claim for payment. One of those is that list of six things that the attending physician must do. In fact, in Colonel Anton's first amendment complaint, which he drafted himself before he retained counsel, he actually cited to the relevant Code of Federal Regulations 32 CFR 199.6 and 32 CFR 199.4. The second amendment complaint cited to the Tricare Manual, the first page of that section, cites to those same Code of Federal Regulations. That is, it's in our brief, and I circled the page number so I could read it to you, and now I can't find it. It is in Exhibit 95 of the second amendment complaint. It's the very first page. All of the necessary information to plead a claim for a violation of the FCA is in both this first amendment complaint and the second amendment complaint. The district court put artificial restraints on our pleading ability and required proof where none was actually required by the law. For those reasons, I would ask the court to reverse the district court's decision to annihilate John Madden, to reverse the district court's decision to dismiss the first amendment complaint, and to instruct the court to revisit the idea of supplemental litigation. We appreciate the argument you all have given. I think there were no more places set for argument. Correct. So you may adjourn.